**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

FILED
JAMES J. WALDRON, CLERK
FEB -9 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

Andrew B. Altenburg, Jr.
U.S. BANKRUPTCY JUDGE

(856) 361-2320

February 9, 2016

**NOT FOR PUBLICATION**

David A. Kasen, Esquire
Kasen & Kasen
1874 East Route 70, Suite 3
Cherry Hill, NJ 08003

Kyle F. Eingorn, Esquire
Dembo, Brown & Burns LLP
1300 Route 73; Suite 205
Mount Laurel, NJ 08054

RE: **In re J Garfield DeMarco
Bankr. Case No. 14-28245-ABA**

Dear Mr. Kasen and Mr. Eingorn:

This is the court's memorandum decision. In addition to the record created before the court on January 14, 2016, the following constitutes the court's findings of facts and conclusions of law.

This matter was originally brought before the court on January 14, 2016 by Debtor J. Garfield DeMarco's counsel, Kasen & Kasen ("Kasen") through its Application For Interim Allowance To Counsel For Debtor for the time period from August 21, 2014 through December 10, 2015 (Doc. 151) ("Application"), and by creditor, RREF II IB Acquisitions, LLC ("RREF"), through its Objection to Professional Fees (Doc. 154) ("Objection"). RREF argues in the Objection that the Fee Application should be denied because (1) the bankruptcy petition was filed in bad faith; (2) payment of counsel's fees before the RREF's claim violates the Absolute Priority Rule under 11 U.S.C. § 1129(b)(2)(B)(ii); and (3) counsel's fees are unreasonable and highly unconscionable, including for example, instances of excessive and duplicitous billing and items that should not have been billed altogether.

For the reasons set forth on the record at the hearing, the court rejected the first and second arguments of RREF. Simply put, RREF failed to support any of claims with regard to the first and second arguments. However, the court acknowledged that RREF made valid points with regard to its third argument (some of which have been conceded by Kasen) and the court took this matter under advisement to review the Application. The matter is now ripe for disposition.

The Bankruptcy Court has an independent duty to review fee requests of all professionals retained in a chapter 11 case to assure that the services rendered were necessary and appropriate and that the fees requested are reasonable. *See, e.g., In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994) and *In re McDermott*, No. 05-17387(DHS), 2009 WL 2905375, at

*6 (Bankr. D.N.J. Aug. 24, 2009). The court "must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Id.* at 844.

Under section 330(a), the court may award "reasonable compensation for actual, necessary services rendered" by the attorney and by other professionals "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." *Busy Beaver*, 19 F.3d at 840. "[T]he court should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). The applicant bears the burden of proving that the fees and expenses sought are reasonable and necessary. *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995).

The Court must conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances. *In re Fleming Companies, Inc.*, 304 B.R. 85, 89-90 (Bankr. D. Del. 2003). A "judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id.* (citing *Busy Beaver*, 19 F.3d at 854). The court should then consider any evidence submitted with the application or at a hearing. *Id.* When making its consideration, the court is not required to make a line-by-line analysis of the fee application and a sampling will suffice. *In re Maruko Inc.*, 160 B.R. 633, 642 645 (Bankr. S.D. Cal. 1993) (citing *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992)) and *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d 833 at 844-45.

Finally, a fee applicant's failure to exercise billing judgment, excessive use of office conferences, and unnecessary duplication of effort will result in reduction of fees where, in sound discretion of bankruptcy court, such fees are unreasonable. *In re Maxine's, Inc.*, 304 B.R. 245 (Bankr. D. Md. 2003). The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services either conferred a negligible benefit or were excessive. *Id.* at 249. Such billing judgment is an absolute requirement of fee applications in bankruptcy. *Id.*

This case was filed on September 4, 2014. Although this case is a very contentious case between the Debtor and RREF, in reality, as acknowledged by Kasen at the hearing on January 14, this case is an uncomplicated chapter 11 individual case which contemplates a simple liquidation. The court's docket reflects that there has been the typical types of activities in this case which usually accompany a chapter 11 individual case – nothing extraordinary. Based upon this court's experience with fee requests in these types of matters, the $122,855.00 in fees requested by Kasen in this case are high prompting a closer review. The court finds as follows:

### A. Duplicative Services

The Code expressly forbids compensation of unnecessarily duplicative services. 11 U.S.C. § 330(a)(4)(A)(i) ("the court shall not allow compensation for . . . unnecessary duplication of services"). When more than one professional is working on the same matter, communication and coordination is required. *In re Jefsaba, Inc.*, 172 B.R. 786, 800 (Bankr. E.D. Pa. 1994) (disallowing fees related to attorney performing work duplicative of others and allowing fees for attorney attending hearing only when he was handling a matter). One person must be aware of what everyone is doing or unnecessary duplication of work will result. *Id.* The compensation of multiple professionals is obviously inappropriate where the second professional is involved purely for his or her education. *Id.* at 801. While all young professionals must be trained, it should not be at the expense of the estate and other creditors. *Id.* If two or more professionals are billing time, they each should make a contribution. *Id.* See also *In re Cahill*, 428 F.3d 536 (5th Cir. 2005).

Kasen stated at the hearing there was no duplication of services and that each attorney involved had specific tasks. However, a review of the Application reflects that it is replete with unwarranted duplicative services. Attached hereto as Schedule "A" is a sampling of duplicative services from the petition date through May 2015[1]. These entries are just a few examples of the many suspect duplicate entries that appear in the Application. It does not appear to the court that the attorneys were working solely on distinct issues as proffered by Kasen. Rather, it appears that for a good portion of the case, the attorneys were working the case collectively and many times reviewing each other's work, duplicating work already done, or reviewing items which appear to be an issue solely being worked on by the other attorney. If two professionals are billing for the same task, they each must make a contribution to the case. *Jefsaba, Inc.*, 172 B.R. at 801. For example, JRK was responsible for the damages motion against US Bank and ultimately brought the matter to its final conclusion. Why then was it necessary for DAK to review the final fully executed consent order and charge the estate for same? *See* Doc. 151-3, p. 20. The court does not accept Kasen's explanation and concludes that there is sufficient evidence to show that there was unnecessary duplicative services performed by both DAK and JRK.

### B. Intraoffice meetings

RREF also calls into question the necessity of several office meetings and conferences between the two Debtor's attorneys for which each attorney charged separately. For example,

| DATE | DESCRIPTION OF SERVICE | ATTY: | HOURS: | DOC.: |
|---|---|---|---|---|
| 9/22/2014 | In office conference with Jenny Kasen re disputed claim with Sotheby's and real estate appraisal and proof of property insurance | DAK | .4 | 151-3, p.4 |

---

[1] Because the Application is supported by a 70 page single spaced statement of services, the court does its analysis through a sampling rather than a line-by-line approach. *See In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833; *In re Maruko Inc.*, 160 B.R. 633 and *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 540 F.2d 102.

| 9/22/2014 | In office conference with David Kasen re disputed claim with Sotheby's, real estate appraisal and proof of property insurance | JRK | .4 | 151-3, p.4 |

Similar intraoffice conferences were billed on October 17, 2014 (2x .3), October 21, 2014 (2x .7), October 22, 2014 (2x .3), December 3, 2014 (2x .5), and January 2, 2015 (2x .2), which total 4.8 hours of meetings between counsel.

In general, no more than one attorney may charge the estate for intraoffice conferences, meetings, and court appearances unless an adequate explanation is given. *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 531 (Bankr. D. Mont. 2000). Entries for attorney office conferences must be intricately scrutinized. *Id.* Such fees will be disallowed where they involve duplication of effort. *Id. See also In re Wireless Telecommunications Inc.*, 449 B.R. 228, 236 (Bankr. M.D. Pa. 2011) ("If the applicant wishes to recover for the time utilized by various professionals convening for the advancement of some issue, specific explanation is the minimum that should be required. In the absence of a reasonable explanation, I would presume that concurrent billing hours to attend the same gathering would be duplicitous."); *In re Kennedy Mfg.*, 331 B.R. 744, 750 (Bankr. N.D. Ohio 2005) (ruling that in the absence of an adequate explanation, it is the general rule that "overstaffing" will be presumed to exist, thereby requiring a reduction in fees, when more than one attorney charges the estate for intraoffice conferences, meetings and court appearances).

### C.    Multiple Attorneys at Court Appearances

When multiple professionals bill for the attendance at the same proceeding, the court must be mindful of the necessity of each person. *In re Armstrong World Indus., Inc.*, 366 B.R. 278, 282 (D. Del. 2007). In assessing reasonableness of fees requested by attorney fee applicant, the court should consider any potential duplication of services; if three attorneys are present at hearing when one would suffice, compensation should be denied for the excess time. *In re Millennium Multiple Employer Welfare Ben. Plan*, 470 B.R. 203 (Bankr. W.D. Okla. 2012). In its analysis, the court may consider the number of attorneys utilized by the opposing side in similar situations. *Id. See also In re Armstrong World Indus., Inc.*, 366 B.R. at 282 (finding that firm failed to establish necessity of attendance by two of its five professionals); *In re Fleming Companies, Inc.*, 304 B.R. 85 (Bankr. D. Del. 2003) (concluding that reduction in fees requested by chapter 11 debtors' attorneys was warranted, based on fact that multiple attorneys from same firm routinely attended same hearing, where counsel for debtors failed to adequately demonstrate that each attorney present at hearing contributed in some meaningful way thereto); *In re Mirant Corp.*, 354 B.R. 113 (Bankr. N.D. Tex. 2006) *subsequently aff'd*, 308 F. App'x 824 (5th Cir. 2009)

In this case, for example, Kasen billed for two attorneys to attend:

| DATE | DESCRIPTION OF SERVICE | ATTY: | HOURS: | DOC.: |
|---|---|---|---|---|
| 10/9/2014 | Attendance at 341 Meeting | DAK | 1.5 | 151-3, p.8 |
|  |  | JRK | 1.5 | 151-3, p.9 |
| 10/28/2014 | Attendance at hearing on Motion for Relief from the Stay | DAK | 2.0 | 151-3, p.12 |
|  |  | JRK | 2.0 | 151-3, p.12 |
| 1/20/2015 | Attendance at US Trustee's Motion to Dismiss | DAK | 1.0 | 151-4, p.8 |
|  |  | JRK | 1.0 | 151-4, p.8 |
| 1/29/2015 | Attendance at US Trustee's Objection to Retention | DAK | 1.5 | 151-4, p.13 |
|  |  | JRK | 1.5 | 151-4, p.13 |

The court is not persuaded that these hearings were particularly complex requiring the attendance of two attorneys. Indeed, at the hearing on Motion for Relief from Stay on October 28, 2014, JRK did not speak a single word and the court cannot understand why DAK alone was not competent to represent the Debtor in that straight forward uncomplicated hearing. Kasen has failed to adequately demonstrate that each attorney present at the hearings contributed in some meaningful way; therefore, a reduction in fees is warranted.

### D.   Complexity

RREF questions whether the amount of time spent performing certain services was reasonable based on the complexity of the task at hand. In determining the amount of reasonable compensation to be awarded to an attorney, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed." 11 U.S.C. § 330(a)(3)(D).

In *In re Spillman Dev. Grp., Ltd.*, the court concluded that the time spent by chapter 11 debtor-in-possession's attorneys in performing tasks related to operation of debtor's business postpetition, including cash collateral orders, and to confirmation of debtor's plan and opposition to the opposing plan proposed by creditor was generally excessive, and fee sought by attorneys for such services would be reduced by $27,500, or roughly 27.5%, noting that the chapter 11 case was not so complex as to warrant the roughly $100,000 in fees sought for performance of such tasks. 376 B.R. 543 (Bankr. W.D. Tex. 2007). *See also In re Sullivan*, 674 F.3d 65 (1st Cir. 2012) (noting that chapter 13 proceeding was relatively uncomplicated, in support of its determination to discard as excessive a number of hours claimed by debtors' attorney in his application for attorney's fees); *In re Claudio*, 459 B.R. 500 (Bankr. D. Mass. 2011) (finding that counsel for chapter 13 debtor failed to establish that he was entitled to compensation of more than $3,500 for his work, in light of case's lack of complexity the fact that counsel performed 25.3 hours of service compared to second attorney's 6.4 hours of service suggested a problem with appropriate delegation); *In re Nicholas*, 496 B.R. 69 (Bankr. E.D.N.Y. 2011) (finding that where certain tasks performed by

senior partner and another senior attorney at chapter 13 debtor's law firm could have appropriately been performed by more junior members of the firm at a lower billing rate, the fees awarded by the bankruptcy court for those tasks would be reduced accordingly).

The court finds that this chapter 11 case was not so complex to warrant the over $100,000 in fees. Furthermore, the court is not convinced that the services were performed within a reasonable amount of time proportionate with the "complexity, importance, and nature of the problem, issue, or task addressed." 11 U.S.C. § 330(a)(3)(D). For example, Debtor's counsel billed over 19 hours for meetings and researching and drafting the straight forward Opposition to RREF's Motion for Relief from Stay (Doc. 151-3, at 9-11) and 8.1 hours for drafting a standard Motion to Authorize Sale (Doc. 151-4, at 20 and Doc. 151-5, at 2). In the Debtor's counsel's Summary of Services, of the total 293.7 billed hours, 118.3 hours are allotted to "Case Administration." The court considers these fees excessive for an admittedly simple chapter 11 case.

### E. Excessive and/or Unnecessary Services

The court also takes issue with some of Kasen's billing practices. Here, there are multiple instances that Kasen billed for the initial review of opposing parties' filings, and then billed again for the review of the Notice of Electronic Filing of the exact same document and/or similarly billed for a review of correspondence and then for a review of the attachment to the correspondence. As examples:

| DATE | DESCRIPTION OF SERVICE | ATTY: | HOURS: | DOC.: |
| --- | --- | --- | --- | --- |
| 9/04/2014 | Review of Notice of Entry of Appearance filed by Dembo & Saldutti on behalf of RREF | DAK | .1 | 151-3, p.1 |
| 9/04/2014 | Review of Notice of Electronic Filing of Notice of Appearance filed by Dembo & Saldutti | DAK | .1 | 151-3, p.2 |
| 3/19/2015 | Review of email from Kyle Eingorn re Consent Order | DAK | .1 | 151-5, p. 7 |
| 3/19/2015 | Review of Consent Order signed by Kyle Eingorn | DAK | .1 | 151-5, p. 7 |

Kasen argues that: "The reason is that one of the Notices of Entry of Appearance was sent by the attorneys directly to Kasen & Kasen, while the second Notice of Entry of Appearance was sent through the electronic filing system by the Court. The attorneys for the debtor review each and every document that comes into its office, and accordingly records the time for same." It cannot possibly take a full six minutes, i.e., a .1, to review an electronic notice and then another six minutes to review the hard copy. Indeed, the court is at a loss as to why it would take twelve

to sixteen minutes to review an electronic notice of a simple document or pleading and that document or pleading itself. *See* Doc. 151-3, pp. 5 and 15. In some cases, Kasen even charged for reviewing an electronic notice for a document it filed! *See* Doc. 151-3, pp. 16, 17 and 20. The court finds this type of charging for simple matters that should at best, in the court's experience, only take a few minutes, excessive.

In addition, the Application reflects that the attorneys are charging their full rate for travel time. *See e.g.* Doc. 151-5, p. 17. In some instances, it appears that travel time is lumped in with court attendance time. *See* Doc. 151-3, p. 12. It is customary in New Jersey that such travel is compensated at fifty percent (50%) of the normal hourly rate. *In re McDermott*, No. 05-17387(DHS), 2009 WL 2905375, at *8 (Bankr. D.N.J. Aug. 24, 2009).

F.  **Administrative Tasks**

As is evident from the Application, many of the services performed by the attorneys at Kasen were the preparation of routine form pleadings, simple letters to parties and the court, and general administrative tasks. Such routine ministerial, secretarial, or paralegal in nature tasks generally should not be compensated at an attorney's hourly rates. The court "always looks to reasonableness and operates by the guidelines that normal secretarial, paralegal, or junior attorney services should be compensated accordingly—for example, simple correspondence, including filing letters, scheduling of meetings, etc., preparation of basic documents such as notices of motion, subpoenas, etc., and routine document review—should be compensated at a lower hourly rate, if compensated at all." *In re McDermott*, No. 05-17387(DHS), 2009 WL 2905375, at *7 (Bankr. D.N.J. Aug. 24, 2009). *See also Busy Beaver*, 19 F.3d 833; *Jefsaba, Inc.*, 172 B.R. 786; *In re Auto. Warranty Corp.*, 138 B.R. 72, 78-79 (Bankr. D. Colo. 1991); *In re Larson*, 346 B.R. 693, 701 (Bankr. E.D. Va. 2006); *In re Adelson*, 239 B.R. 627, 629 (Bankr. S.D. Fla. 1999); *In re Moreno*, 295 B.R. 402, 405 (Bankr. S.D. Fla. 2003); *In re GSC Grp., Inc.*, No. 10-14653 AJG, 2012 WL 676409, at *7 (Bankr. S.D.N.Y. Feb. 29, 2012); *In re Green River Coal Co., Inc.*, 163 B.R. 103, 104-05 (Bankr. W.D. Ky. 1994); *In re Worldwide Direct, Inc.*, 316 B.R. 637 (Bankr. D. Del. 2004); and *In re Parrilla*, 530 B.R. 1, 20 (Bankr. D.P.R. 2015). It appears to the court that Kasen failed to utilize staff or an attorney with a lower hourly rate for many items which appear to be administrative in nature like the preparation of pleadings and professionals' applications, filings, and correspondences.[2] In most cases, the attorney with the highest hourly rate ($500) charged for these tasks even though it is clear that the attorney with the lowest hourly rate ($300) at Kasen was capable of preparing such routine pleadings. *See* Doc. 151-5, p. 18. More troubling, Kasen attempts to charge for pre-petition services, *see* Doc. 151-3, p. 1, and for delivery services made by an attorney at a rate of $350 an hour. The Application will be reduced immediately by $975 for these two unwarranted charges.

---

[2] The most significant amount of time spent in this case so far is for "Case Administration" at 118.3 hours or $49,355.00 and there is another 17 hours or $7,680 for the administrative task of preparing "Fee/Employment Applications".

## CONCLUSION

A fee applicant must exercise billing judgment and failure to do so will result in reduction of fees where, in sound discretion of bankruptcy court, such fees are unreasonable. *Maxine's, Inc.*, 304 B.R. 245 (Bankr. D. Md. 2003). It appears to the court that Kasen exercised billing judgment only after the Objection was filed by RREF and even then, it was *de minimis*. *See* Doc. 157. For the reasons set forth above, as well as based upon its own experiences, the court finds that portions of the Application are duplicative, unreasonable and/or unnecessary, if not excessive and reduction of the Application is absolutely warranted. The court is not required to undertake a line-by-line analysis to determine what exact fees must be excluded or adjusted. "If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." *In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011). *See also McDermott*, 2009 WL 2905375, at *7 (reducing time for administrative tasks by 20% and them allowing an hourly rate of $100 for that time); *In re Automobile Warranty Corp.*, 138 B.R. 72, 77 (Bankr. D. Colo. 1991) (applying a ten percent (10%) reduction to the total amount of fees); and *In re Maruko Inc.*, 160 B.R. 633 (Bankr. S.D. Cal. 1993) (applying a twenty-five percent (25%) reduction to time billed).

It is evident that Kasen provided unnecessary duplicative and excessive services and excessively charged for routine pleadings in this admittedly uncomplicated case. There simply is no purpose for the blatant double billing, the working of the file by both attorneys, and excessive time spent on routine pleadings. DAK has 45 years of experience and JRK has 5 years of experience and the time spent by each of them in this case does not comport to the amount of experience they have. This, and the failure to make an effort to use staff or a lower hourly rate on routine tasks, as well as the failure by Kasen to exercise billing judgment, warrants a twenty-five percent (25%) reduction to time billed. The fee request is reduced as follows:

```
              $122,855.00 (total request)
     Less          $975   (unwarranted charges)
              $121,880.00
     Less       30,470.00 (25% reduction)

Total Fee:     $91,410.00
```

As there was no objection to the expenses incurred and the court sees no basis for a reduction, the expenses will be allowed in the amount of $6,203.97.

The court reserves the right to further supplement its findings of fact and conclusions of law.

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ _____
United States Bankruptcy Judge

## Schedule "A"[1]

| DATE | DESCRIPTION OF SERVICE | ATTY: | HOURS: | DOC. |
|---|---|---|---|---|
| 9/04/2014 | Preparation of email to Kyle Eingorn re filing of petition staying action | DAK | .2 | 151-3, p.1 |
| 9/04/2014 | Preparation of email to Michael Brown re filing of petition staying action | DAK | .2 | 151-3, p.1 |
| 9/05/2014 | Review of Notice of Missing Documents | DAK | .1 | 151-3, p.2 |
| 9/05/2014 | Review of Notice of Missing Documents | DAK | .1 | 151-3, p.2 |
| 9/29/2014 | Preparation of email to Kirstein Ardelean re insurance certificates | DAK | .1 | 151-3, p.6 |
| 9/29/2014 | Preparation of email to Kirstein Ardelean re insurance certificates | DAK | .1 | 151-3, p.6 |
| 10/06/2014 | Telephone conversation with Garfield DeMarco re insurance | DAK | .2 | 151-3, p.7 |
| 10/06/2014 | Telephone conversation with Garfield DeMarco re insurance | DAK | .2 | 151-3, p.7 |
| 10/29/2014 | Email correspondence with John Nye re debtor's real estate | DAK | .2 | 151-3, p.12 |
| 10/29/2014 | Email correspondence with John Nye re debtor's real estate | JRK | .2 | 151-3, p.12 |
| 11/04/2014 | Email correspondence with John Nye re selling collectibles | DAK | .2 | 151-3, p.13 |
| 11/04/2014 | Email correspondence with John Nye re selling collectibles | JRK | .2 | 151-3, p.13 |
| 11/19/2014 | Email correspondence with John Nye re proposal | DAK | .3 | 151-3, p.13 |

---

[1] The court acknowledges that Kasen has conceded that some of these items are duplicated.

1

| Date | Description | Atty | Hours | Ref |
|---|---|---|---|---|
| 11/19/2014 | Email correspondence with John Nye re proposal | JRK | .3 | 151-3, p.14 |
| 12/01/2014 | Review of email from John Nye re proposed auction | DAK | .1 | 151-3, p.15 |
| 12/01/2014 | Review of email from John Nye re proposed auction | JRK | .2 | 151-3, p.15 |
| 12/22/2014 | Reviewed signed Consent Order Partially Resolving Debtor's Motion | JRK | .2 | 151-3, p.20 |
| 12/22/201 | Review of fully executed Consent Order Partially Resolving Debtor's Motion for Damages | DAK | .1 | 151-3, p.20 |
| 1/02/2015 | Reviewed contract for sale of 5 Haynes Creek Lane, Medford, NJ | DAK | .4 | 151-4, p.1 |
| 1/02/2015 | Reviewed sale contract for sale of 5 Haynes Creek Lane, Medford, NJ | JRK | .4 | 151-4, p.2 |
| 1/07/2015 | Reviewed 12 month projected cash flows prepared by Carl Snyder | DAK | .3 | 151-4, p.3 |
| 1/07/2015 | Reviewed 12 month projected cash flows prepared by Carl Snyder | JRK | .3 | 151-4, p.4 |
| 2/17/2015 | Email correspondence with Karina Velter re settlement of Motion for Damages against U.S. Bank | JRK | .2 | 151-4, p.19 |
| 2/18/2015 | Review of email correspondence between Jenny Kasen and Karina Velter re settlement of U.S. Bank Motion | DAK | .1 | 151-4, p.19 |
| 2/25/2015 | Email correspondence with Nye re future auction/single seller sale | JRK | .2 | 151-5, p.1 |
| 2/25/2015 | Review of email from John Nye to Jenny Kasen re separate auction sale for debtor | DAK | .1 | 151-5, p.1 |

2

| Date | Description | Initials | Hours | Reference |
|---|---|---|---|---|
| 3/04/2015 | Review of limited objection of RREF II IB Acquisitions, LLC to debtor's Motion to Authorize Sale of Certain Estate Property | DAK | .2 | 151-5, p.3 |
| 3/09/2015 | Reviewed RREF's objection to motion to sell art collectibles through Nye | JRK | .3 | 151-5, p.3 |
| 3/25/2015 | Review of Objection to Motion to Approve Private Sale of 34 N. Packard Ave., Hammonton, NJ filed by Kyle Eingorn | DAK | .2 | 151-5, p.7 |
| 3/25/2015 | Reviewed RREF's Objection to sale motion (North Packard St.) | JRK | .2 | 151-5, p.7 |
| 4/07/2015 | Review of email from John Nye re end of auction | DAK | .1 | 151-5, p.9 |
| 4/07/2015 | Email correspondence with John Nye re auction results | JRK | .1 | 151-5, p.9 |
| 4/10/2015 | Email correspondence with John Nye re auction re[s]ults | JRK | .1 | 151-5, p.10 |
| 4/10/2015 | Review of email from John Nye re auction results | DAK | .1 | 151-5, p.10 |
| 5/04/2015 | Review of updated title commitment from Surety Title for 5 Haynes Creek Lane | DAK | .1 | 151-5, p.14 |
| 5/04/2015 | Review of revised title commitment from Surety Title | DAK | .1 | 151-5, p.14 |
| 5/13/2015 | Email correspondence with Sharon DeStefano re fee application | JRK | .1 | 151-5, p.19 |
| 5/13/2015 | Review of email from Sharon DeStefano re Application for Retention | DAK | .1 | 151-5, p.19 |